UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
DAVID HAYES,                        )
                                    )
                  Plaintiff,        )
                                    )        Civil Action
v.                                  )        No. 22-10132-PBS
                                    )
BNY MELLON, KEITH REALINI, and      )
LAURIE KELLY,                       )
                                    )
                  Defendants.       )
_____)

**MEMORANDUM AND ORDER**

August 9, 2022

Saris, D.J.

**INTRODUCTION**

Plaintiff David Hayes brings claims against his former employer, Defendant Bank of New York Mellon ("BNY Mellon"), alleging disability discrimination in violation of both Mass. Gen. Laws ch. 151B and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and age discrimination in violation of G.L. 151B, as well as willful violation of the Family Medical Leave Act ("FMLA"). Plaintiff also asserts state law claims of intentional interference with advantageous or contractual relations and intentional infliction of emotional distress ("IIED") against his former supervisors, Defendants Keith Realini and Laurie Kelly. All claims stem from BNY Mellon's termination of Plaintiff's employment, which BNY Mellon

asserts was part of a pre-existing outsource plan. Defendants
BNY Mellon, Realini, and Kelly have moved for judgment on the
pleadings pursuant to Fed. R. Civ. P. 12(c).

After hearing, the Court **ALLOWS** Defendants' motion for
judgment on the pleadings on all counts.

### FACTUAL BACKGROUND

While the following facts are primarily drawn from the
complaint, the Court also considers uncontested facts contained
in exhibits attached to the motion for judgment on the
pleadings.

Plaintiff worked as a programmer at BNY Mellon for
approximately seventeen years and performed his duties well. He
is over the age of 50 and suffers from various medical
conditions, including hearing-related issues. His supervisors,
Realini and Kelly, were aware of these conditions and allowed
him to begin working remotely in January 2018.[1]

Early in May 2019,[2] while still a BNY Mellon employee,
Plaintiff informed his supervisor that his medical conditions
had become increasingly worse and that he had recently been

---

[1] Plaintiff asserts a bare allegation that BNY Mellon "did not provide the
Plaintiff with the resources and other benefits other employees who were
under the age of 40 and who were not disabled regularly received," Dkt. 1-1
¶ 16, but he does not allege any particular resources or benefits denied by
BNY Mellon, other than a reference to a delay in repairing his laptop.
[2] While the exact date is not specified, Plaintiff asserts he spoke to his
supervisor one day prior to termination. See Dkt. 24 at 11 ("[J]ust one day
prior to his termination, he explored a disability medical leave with his
superior and also discussed applying for long term disability benefits.").
The termination occurred "on or about May 16, 2019." Dkt. 1-1 ¶ 14.

diagnosed with acute hypertension. Because he was so sick, Plaintiff discussed the "possibility" of applying for disability leave and obtaining long-term disability benefits with Realini. Dkt. 1-1 ¶ 11. Realini then asked for a list of Plaintiff's duties so another employee could handle them.

Back in 2017, BNY Mellon had begun to consider outsourcing Plaintiff's entire seventeen-member division, including Defendants Realini and Kelly, to Conduent, Inc. in a transaction later titled "Project Charlotte." All affected employees were notified that they would be terminated by BNY Mellon and offered comparable employment with Conduent. The "Project Charlotte" plan was finalized on April 26, 2019.

On May 6, 2019, Plaintiff was offered a job as an engineering analyst with Conduent. He knew that Conduent offered this position because of BNY Mellon's agreement with Conduent, and he accepted Conduent's offer on May 14, 2019. As indicated on the offer letter and signed offer acknowledgement form, the position with Conduent started on May 16, 2019. That same day, one day after his conversation with Realini about his worsening medical condition, Plaintiff's employment with BNY Mellon was terminated. BNY Mellon did not hire a replacement for Plaintiff or any of the other terminated employees.

Just under two weeks after he began his position with Conduent, Plaintiff was fired on May 28, 2019, after being

informed he tested positive on a drug test administered on or
about May 15, 2019. This termination by Conduent is the subject
of separate litigation. Hayes v. Conduent Commercial Solutions,
LLC., Civil Action No. 21-cv-11545-DJC.

**LEGAL STANDARD**

Under Rule 12(c), "after the pleadings are closed—but early
enough not to delay trial—a party may move for judgment on the
pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the
pleadings is a close procedural cousin to a motion to dismiss
for failure to state a claim under Federal Rule of Civil
Procedure 12(b)(6) as "these two types of motions are treated in
much the same way." Kando v. R.I. State Bd. of Elections, 880
F.3d 53, 58 (1st Cir. 2018). As with a motion to dismiss,
"[b]ecause such a motion [for judgment on the pleadings] calls
for an assessment of the merits of the case at an embryonic
stage, the court must view the facts contained in the pleadings
in the light most favorable to the nonmovant and draw all
reasonable inferences therefrom to the nonmovant's behoof." R.G.
Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).
Unlike a motion to dismiss, which concerns only the complaint, a
motion for judgment on the pleadings allows for consideration of
all the pleadings, see Fed. R. Civ. P. 12(c), which may include
copies of written instruments incorporated as exhibits, see Fed.
R. Civ. P. 10(c). However, "[l]ike Rule 12(b)(6), Rule 12(c)

4

does not allow for any resolution of contested facts; rather, a
court may enter judgment on the pleadings only if the
uncontested and properly considered facts conclusively establish
the movant's entitlement to a favorable judgment." Aponte-Torres
v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006).

**DISCUSSION**

## I. <u>Disability Discrimination Claims</u>

Plaintiff claims that BNY Mellon terminated his position
because of his disability or handicap, in violation of the ADA
and G.L. 151B. He relies primarily on the temporal proximity
between his conversation with Realini about his worsening health
conditions and his official termination.

To succeed on a claim of disability discrimination under
both the ADA and G.L. 151B, a plaintiff must make a plausible
claim that his employer took adverse employment action against
him because of his disability or handicap. See Ramos-Echevarria
v. Pichis, Inc., 659 F.3d 182, 186 (1st Cir. 2011); Tobin v.
Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005).

In light of the pre-existing plan to outsource Plaintiff's
entire division, Plaintiff fails to state a plausible claim that
he was terminated as a result of his disability. His
conversation with Realini about his worsening medical conditions
and the possibility of taking leave occurred after he accepted
an offer from employment from Conduent on May 14, 2019, and well

after he received the offer on May 6, 2019. This offer was part
of a plan, finalized the prior month, to outsource his whole
department. It is implausible that Plaintiff's conversation with
Realini prompted his termination the following day, the same day
he was to begin employment at Conduent.[3]

## II.     Age Discrimination Claim

Plaintiff also alleges age discrimination under G.L. 151B.
Age discrimination claims under G.L. 151B must allege both
discriminatory animus and a causal connection between the animus
and the harm suffered. See Sullivan v. Liberty Mut. Ins. Co.,
825 N.E.2d 522, 530 (Mass. 2005); Mass. Gen. Laws ch. 151B, § 1.

As with the disability discrimination claim, in light of
the pre-existing outsourcing plan, Plaintiff has not plausibly
alleged that BNY Mellon's reason for his termination was
motivated by discriminatory animus. Nor has Plaintiff alleged a
plausible claim that he was denied resources as a result of his
age—his conclusory sentence in his complaint is insufficient.
Defendants are entitled to judgment on the pleadings on the age
discrimination claim as well.

---

[3] While Plaintiff's disability discrimination claim focuses primarily on his
conversation with Realini, he also alleges that his work was impaired by BNY
Mellon's unnecessary delay in repairing his laptop. However, he neither
alleges that the delay was intentional and because of his disability (or age
or interest in taking FMLA leave) nor that non-disabled employees (or
employees under 40 or who had not inquired about FMLA leave) received faster
service.

III.   **FMLA Claims**

Plaintiff asserts that BNY Mellon retaliated against him
for attempting to take FMLA leave by terminating his position
with the company. This claim fails along the same lines as his
disability and age discrimination claims. The final element of a
retaliation claim is a causal connection between the adverse
employment action and Plaintiff's exercise of an FMLA-protected
right. See Germanowski v. Harris, 854 F.3d 68, 73 (1st Cir.
2017). Given the pre-existing outsourcing plan and the
undisputed fact that Plaintiff had already received the job
offer from Conduent before discussing the possibility of taking
disability leave with Realini, it is implausible that BNY Mellon
terminated his position in retaliation for seeking disability
leave.

Plaintiff also alleges that BNY Mellon's termination of his
position made it impossible for him to take advantage of the
FMLA leave he had accrued as a BNY Mellon employee. "The FMLA
makes it unlawful for 'any employer to interfere with, restrain,
or deny the exercise of' any FMLA-protected right." Carrero-
Ojeda v. Autoridad de Energera Electrica, 755 F.3d 711, 722 (1st
Cir. 2014) (citing 29 U.S.C. § 2615(a)(1)). To state an
interference claim, a plaintiff "need only plausibly state that
she is entitled to the disputed leave." Id. However, courts have
held that interference with FMLA benefits via termination does

7

not constitute a violation if the employer has a legitimate basis for terminating the employee. See, e.g., Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 877 (10th Cir. 2004) (affirming a grant of summary judgment on an FMLA interference claim to an employer who terminated a consistently absent employee after she attempted to apply for medical leave); see also Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 403 (3d Cir. 2007) (holding "the FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA"); Edgar v. JAC Prods., Inc., 443 F.3d 501, 508 (6th Cir. 2006) (holding "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct"); Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 977 (8th Cir. 2005) (holding "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights"). Here, given the outsourcing plan, BNY Mellon would have terminated Plaintiff even if he had never expressed interest in exercising substantive FMLA rights. Plaintiff has no plausible claim under the FMLA.

IV.   **Intentional Interference with Advantageous or Contractual Relations and IIED Claims**

Plaintiff alleges that Realini and Kelly intentionally interfered with his relationship with BNY Mellon and intentionally inflicted emotional distress upon him. The elements of an intentional inference with advantageous or contractual relations claim are: (1) the plaintiff had an advantageous relationship or contract with a third party, (2) the defendants knowingly induced the third party to break the relationship/contract, (3) the interference was improper in motive or means, and (4) the interference caused the plaintiff harm. Rando v. Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (citing Blackstone v. Cashman, 860 N.E.2d 7, 12–13 (Mass. 2007)). Plaintiff has not alleged facts supporting the final three elements—he has not alleged that the individual defendants induced the termination. There is no plausible claim that the two supervisors interfered with plaintiff's contract, especially given that they were also terminated as part of the outsourcing plan.

Likewise, Plaintiff relies on conclusory statements to assert his IIED claim and fails to allege facts supporting either of the first two elements: (1) that the defendant intended, knew, or should have known his conduct would cause emotional distress, and (2) that the conduct was extreme and

outrageous. <u>Polay v. McMahon</u>, 10 N.E.3d 1122, 1128 (Mass. 2014).

No facts are specifically alleged as to <u>any</u> actions taken by the

individual defendants Realini and Kelly, other than Realini's

request that Plaintiff provide him with a list of Plaintiff's

duties. Extreme and outrageous conduct is that which "go[es]

beyond all possible bounds of decency, and [is] regarded as

atrocious, and utterly intolerable in a civilized community."

<u>Id.</u> at 1128 (quoting <u>Roman v. Trs. of Tufts Coll.</u>, 964 N.E.2d

331, 341 (Mass. 2012)). No relevant facts alleged in the

complaint rise to this level. Therefore, judgment on the

pleadings is proper on both the intentional interference and

IIED claims.

### **ORDER**

For the foregoing reasons, Defendants' motion for judgment

on the pleadings (Dkt. 18) is **ALLOWED**.


SO ORDERED.

                                   /s/ PATTI B. SARIS
                                   Hon. Patti B. Saris
                                   United States District Judge